UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STRYKER CORPORATION and STRYKER
SALES CORPORATION,

       Plaintiffs,

v.

ZIMMER, INC.; ZIMMER SURGICAL, INC.;
and ZIMMER BIOMET HOLDINGS, INC.,

       Defendants.
_____

ZIMMER, INC. and ZIMMER SURGICAL, INC.,

       Counter-Claimants,

v.

STRYKER CORPORATION and STRYKER
SALES CORPORATION,

       Counter-Defendants.
_____/

Case No. 1:14-cv-1201

HON. JANET T. NEFF

## OPINION AND ORDER

       This is a patent infringement case. Plaintiffs Stryker Corporation and Stryker Sales Corporation (collectively "Stryker") and Defendants Zimmer, Inc.; Zimmer Surgical, Inc.; and Zimmer Biomet Holdings, Inc. (collectively "Zimmer") work in the medical technology field. Stryker brought this action against Zimmer, alleging that Zimmer's TotalShield™ Surgical Helmet System, equipment worn by operating room personnel, infringes Stryker's

       •    U.S. Patent No. 6,481,019 ("the '019 patent" [Dkt 1-2, Compl. Ex. B]), claims 125, 126 and 129;

- U.S. Patent No. 6,622,311 ("the '311 patent" [Dkt 1-1, Compl. Ex. A]), claims 26-29 and 35;

- U.S. Patent No. 7,752,682 ("the '682 patent" [Dkt 1-3, Compl. Ex. C]), claims 1-2, 4-5, 9, 11-13, 15-16, 18 and 20; and

- U.S. Patent No. 8,282,234 ("the '234 patent" [Dkt 1-4, Compl. Ex. D]), claims 1, 6-8, 12 and 14.

Stryker seeks injunctive relief and damages. Zimmer, Inc. and Zimmer Surgical, Inc. filed a counterclaim for declaratory judgments of non-infringement and invalidity. The matter is presently before the Court for claim construction pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). The parties have filed a Joint Comprehensive Claim Constructive Statement (Dkt 54) and claim construction briefs (Dkts 58, 72 & 77). Further, the parties made presentations and offered arguments to the Court at a hearing on October 19, 2015.[1] The Court now issues this Opinion and Order to resolve the claim construction issues the parties identify.

## I. CONTROLLING AUTHORITY

The United States Court of Appeals for the Federal Circuit has "exclusive jurisdiction—(1) of an appeal from a final decision of a district court ... in any civil action arising under ... any Act of Congress relating to patents...." 28 U.S.C. § 1295(a). "Accordingly, the Federal Circuit's rulings on substantive patent law are controlling authority on this Court." *Scholle Custom Packaging, Inc. v. Grayling Indus., Inc.*, No. 1:03-cv-93, 2010 WL 2232273, at *1 (W.D. Mich. June 3, 2010) (citing authorities therein).

---

[1]Neither party indicated that expert testimony was required for the Court to resolve any of the claim construction issues (Stryker's Br., Dkt 58 at 18 n.5; Zimmer's Br., Dkt 72 at 5 n.2).

## II.  LEGAL FRAMEWORK

"[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  Hence, "[a]n infringement analysis entails two steps."  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996).  The first step, commonly known as claim construction or interpretation, is "determining the meaning and scope of the patent claims asserted to be infringed."  *Id.*  The second step is "comparing the properly construed claims to the device accused of infringing."  *Id.*  The inquiry required by the first step "is a matter of law exclusively for the court."  *Id.* at 970-71.  A claim construction order, in turn, dictates "how the court will instruct the jury regarding a claim's scope."  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1359 (Fed. Cir. 2008).

The Federal Circuit summarized the basic principles of claim construction in *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996), as follows:

> In determining the proper construction of a claim, the court has numerous sources that it may properly utilize for guidance. These sources have been detailed in our previous opinions, as discussed below, and include both intrinsic evidence (e.g., the patent specification and file history) and extrinsic evidence (e.g., expert testimony).
>
> It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history.  Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language.  First, we look to the words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention.  Although words in a claim are generally given their ordinary and customary meaning, a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history.

>Thus, second, it is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning. The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication.  As we have repeatedly stated, "[c]laims must be read in view of the specification, of which they are a part."  The specification contains a written description of the invention which must be clear and complete enough to enable those of ordinary skill in the art to make and use it.  Thus, the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.
>
>Third, the court may also consider the prosecution history of the patent, if in evidence.  This history contains the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims.  As such, the record before the Patent and Trademark Office is often of critical significance in determining the meaning of the claims.  Included within an analysis of the file history may be an examination of the prior art cited therein.  In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term. In such circumstances, it is improper to rely on extrinsic evidence.

*Id.* at 1582-83 (citations and internal quotations omitted).

The task of comprehending the words of a claim is not always a difficult one.  *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 805 (Fed. Cir. 2007).  "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."  *Phillips*, 415 F.3d at 1314 ("reaffirm[ing] the "basic principles of claim construction outlined" in several cases, including *Vitronics* and *Innova/Pure Water*).  The inquiry therefore typically "begins and ends with the intrinsic evidence."  *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1218 (Fed. Cir. 2014) (citing *Phillips*, 415 F.3d at 1318). "'The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.'"  *Phillips*, 415 F.3d at 1316 (quoting *Renishaw PLC v. Marposs Societa per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

### III. CLAIM CONSTRUCTION

At issue are a total of eighteen claim terms. Stryker requests correction of typographical errors in two claim terms. Zimmer agrees with Stryker's proposed correction of the typographical errors and requests construction of the remaining claim terms. Stryker maintains that the plain and ordinary meaning of the remaining claim words (as informed by the specification and file history) should control. The Court will examine the disputed terms, in turn.

### A. Disputed Terms of the '019 Patent

1.  *"first visual indicator"* and *"second visual indicator"* (claims 125, 126 & 129)

Zimmer's proposed constructions are: "first marker or indicator, distinct from a mounting mechanism, that the wearer uses to visually align the face shield with the helmet" and "second marker or indicator, distinct from a mounting mechanism, that the wearer visually aligns with the first visual indicator."

Stryker asserts that "first visual indicator" and "second visual indicator" are "commonly understood words with widely accepted meanings" (Dkt 58 at 11). According to Stryker, Zimmer's proposed constructions insert extraneous limitations into the claims and also improperly render other claim language redundant (*id.* at 11-12). Stryker points out, for example, that Zimmer's construction of "first visual indicator" includes the phrase "that the wearer uses to visually align the face shield with the helmet," even though this language is already present in claim 125, which recites a first visual indicator that enables "the user to visually align said face shield with said helmet assembly" (*id.* at 12).

In response, Zimmer argues that "the specification and prosecution history limit the meaning of the claimed visual indicators, making clear that they are markers or similar indicators to be

visually aligned with one another" (Dkt 72 at 12).  Zimmer asserts that its constructions "merely describe what Stryker allegedly invented" (*id.* at 13).

The Court is not persuaded by Zimmer's argument.

The disputed phrases do not need construction.  Their meanings are clear in view of the intrinsic evidence, including the specifications, which state that the "first visual indicator 107 is a marker or other suitable visual indicator for the user to look at as he or she is self-gowning" (Dkt 1-2, Compl. Ex. B at 11:55-57) and that the "second visual indicator 109 is a marker or other suitable visual indicator that is positioned relative to the facial opening 42 of the helmet assembly 12 for alignment with the first visual indicator 107" (*id.* at 11:60-63).

2. *"automatically center said/the face shield over said facial opening"* (claims 125 & 129)

Zimmer's proposed construction is: "center the face shield over the facial opening by visually aligning the visual indicators without any further action or adjustment by the wearer."

Stryker argues that the meaning of the claim term is clear in view of the intrinsic evidence, including the specification, which states that "the face shield 96 is automatically centered relative to the facial section 40 and the facial opening 42 of the helmet assembly 12, and there is no need for the user to repeatedly adjust the face shield" (Dkt 58 at 12, quoting Dkt 1-2, Compl. Ex. B at 11:26-30).  Stryker argues that Zimmer's proposed construction improperly inserts extraneous limitations into the claim, such as "visually aligning the visual indicators," which is not included in the plain language of this requirement (*id.* at 12-13).  And Stryker argues that because other claim language recites that the second visual indicator is "for alignment" (claim 125) and "adapted to align" (claim 129) with the first visual indicator, Zimmer's construction creates multiple redundancies (*id.* at 13; Reply, Dkt 77 at 7).

In response, Zimmer argues that its construction is consistent with the rest of the claim (Dkt 72 at 13). Zimmer asserts that "[t]his is also confirmed by the specification, which explains that the visual indicators 'automatically center' the face shield over the facial opening when the wearer visually aligns them" (*id.*, quoting Dkt 1-2, Compl. Ex. B at 11:43–12:2).

The Court is not persuaded by Zimmer's argument for the reasons stated by Stryker. The disputed phrase does not need construction; rather, its meaning is clear in view of the intrinsic evidence. Zimmer's proposed construction, in contrast, improperly creates redundancies. *See, e.g., Intervet Inc. v. Merial Ltd.*, 617 F.3d 1282, 1290 (Fed. Cir. 2010) (reversing the district court's claim construction, which rendered another claim limitation redundant).

3.    *"assisting the single user is self-gowning"* and *"a's the user maintains sterility"* (claim 125)

Stryker asserts that the language contains two clear typographical errors that should be corrected during claim construction; specifically, "is" should be "in," and "a's" should be "as," such that the claim reads as follows: "assisting the single user in self-gowning" and "as the user maintains sterility" (Dkt 58 at 13). Zimmer does not object to the corrections (Dkt 72 at 12 n.7).

The Court agrees that the two typographical errors in the claim warrant correction. *See generally CBT Flint Partners, LLC v. Return Path, Inc.*, 654 F.3d 1353, 1358 (Fed. Cir. 2011) (instructing that a district court can correct an error in a patent claim if "(1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification, and (2) the prosecution history does not suggest a different interpretation of the claims").

### B.  Disputed Terms of the '311 Patent

1.    *"adapted to automatically center said face shield relative to the helmet assembly"* (claim 26)

Zimmer's proposed construction is: "adapted, when mounted on the helmet assembly, to center the face shield on the helmet assembly without further action or adjustment by the wearer."

Stryker asserts that like the disputed "automatically center" claim language in the '019 patent, the "automatically center" language in this patent should also control (Dkt 58 at 14). Stryker points out that Zimmer's construction again inserts extraneous language—"when mounted on the helmet assembly"—that is not found in the claim, and that other language in claim 26 already recites that the automatic centering occurs "as the user self-gowns" (*id.*; Reply, Dkt 77 at 8).

In response, Zimmer argues that Stryker's "plain and ordinary meaning" construction would completely divorce the phrase's meaning from the intrinsic record inasmuch as the claimed mounting mechanism/device, in contrast to prior art, allegedly "automatically center[s]" the face shield over the facial opening when the face shield is mounted on the mounting clip" (Dkt 72 at 14-15, quoting Dkt 1-1, Ex. A at 11:31-36).

The Court is not persuaded by Zimmer's argument. The disputed phrase does not need construction. Its meaning is clear in view of the intrinsic evidence. And the Court agrees with Stryker that the additional language Zimmer seeks to insert into the claim is extraneous.

2. *"[adapted] to support said face shield and said filter medium on the helmet assembly"* (claim 26)

Zimmer's proposed construction is: "adapted, when mounted on the helmet assembly, to support the entire weight of the face shield and gown."

Stryker argues that the specification confirms that the word "support" has its plain meaning and that Zimmer's proposed construction, in contrast, re-writes the claim to require support of the "entire weight of the face shield and gown" (Dkt 58 at 25). Stryker argues that the claim does not use the word "entire" and the word "support" does not require that the support be of the "entire"

8

weight (*id.*). Stryker argues that Zimmer's proposed construction is contrary not only to the claim language, but also to the purpose of the invention, i.e., supporting the face shield and filter medium to assist the user *during* self-gowning (*id.* at 26).

Zimmer disagrees, opining that the meaning of "support" in the claims is "unclear," and asserting that its proposed construction "resolves this problem based on the intrinsic record" (Dkt 72 at 15). Zimmer explains that "mounted" in its proposal "simply means that the mounting mechanism (108) and the mounting device (112) are mounted to one another (i.e., engaged), not that the face shield is fully affixed to the helmet or that the gown/hood is draped over it" (*id.* at 16). Additionally, Zimmer explains that "adapted" in its proposal "denotes the capability of supporting the entire weight in a way that facilitates gowning" (*id.*).

The Court is not persuaded by Zimmer's argument. The disputed phrase does not need construction. Jurors can understand the meaning of the word "support." Zimmer's proposed construction, in contrast, is confusing. Moreover, Zimmer's proposed construction improperly relies on a preferred embodiment disclosed in the specification, to wit: that "[t]he mounting clip 114 preferably also supports an entire weight of the gown 88 and the face shield 96" (Dkt 1-1, Compl. Ex. A at 11:22-24). It is important "not to confuse exemplars or preferred embodiments in the specification that serve to teach and enable the invention with limitations that define the outer boundaries of claim scope." *Intervet*, 617 F.3d at 1287 (citing *Phillips*, 415 F.3d at 1323).

### C. Disputed Terms of the '682 Patent

1.      *"shell"* (claims 1, 2, 11, 12 & 15)

Zimmer's proposed construction is: "outer covering enclosing a space."

Stryker argues that the word "shell" as it appears in the asserted claims is clear and does not require construction beyond its plain meaning (Dkt 58 at 17). Moreover, Stryker points out that the specification illustrates that the inventors were not attributing any special meaning to the term "shell" other than to make clear that the "shell" is a support structure, not an "outer covering" (*id.*; Reply, Dkt 77 at 8-9).

Zimmer argues that construction is required "to ground Stryker's allegations" inasmuch as Stryker's infringement contentions identify "three different structures of the accused products as the claimed 'shell'" (Dkt 72 at 21, citing Dkt 72-13 [Joint Chart Disclosing Claims and Defenses], Stryker's Ex. M at 71-72). According to Zimmer, Stryker's allegations suggest "a broader meaning that would divorce 'shell' from the above-the-head air flow structure both described and claimed by the '682 patent" (*id.*). Zimmer argues that its construction should be adopted because the construction "merely provides the dictionary definition that is consistent with 'shell' as used in the '682 patent" (*id.*).

The Court is not persuaded by Zimmer's argument. The term "shell" does not need construction. Further, the Court agrees with Stryker that Zimmer's proposed construction construing "shell" based on dictionary definitions as "outer covering enclosing a space" is inconsistent with the specification, which explains that "the helmet assembly 22 includes a shell 28 providing structural support (i.e., a support structure 28)" (Dkt 1-3, Compl. Ex. C at 3:63-65). *See Phillips*, 415 F.3d at 1321 ("heavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification").

2.     *"nozzles"* (claim 18); *"nozzle assembly"* (claims 1, 2, 4, 5, 9); *"duct assembly"* (claims 1, 2, 4, 5, 9, 11, 15 & 18); and *"outlet duct"* (claims 11 & 16)

The similarity of Zimmer's proposed constructions necessitates this Court consider these four claim terms in tandem. Zimmer's proposed constructions are, respectively: "tubes projecting from the shell for directing air flow"; "assembly with a tube projecting from the shell for directing air flow"; "assembly with a tube projecting from the shell for directing air flow"; and "outlet tube projecting from the shell for directing air flow."

While Zimmer would replace "nozzle," "duct" and "outlet duct" with "tube," Stryker argues that the words "nozzle," "duct" and "outlet duct" have plain meanings that are readily understood and that the plain meanings are further supported by the specification (Dkt 58 at 17-19). Stryker points out that the specification explains that the nozzle assembly is a structure that functions to "direct air against the neck of the user" (*id.* at 17). Similarly, Stryker points out that the word "duct" is readily understood in the context of the claims as a "structure that receives air discharged by the fan, which it then discharges through a tip towards the back of the neck" (Dkt 57 at 18, citing Dkt 1-3 at 32, Compl. Ex. C at claim 11). Last, Stryker points out that "outlet duct," in the context of the claims, is a structure that "extends forward from said fan that receives air discharged from said fan" and has "an opening through which air is discharged to below said head band" (Dkt 58 at 19, citing Dkt 1-3, Compl. Ex. C at 7:19-54). Stryker argues that while the specification depicts a nozzle embodiment that is tube-like, it is improper for Zimmer to specially define "nozzle" or "nozzle assembly" as limited to tubes (*id.* at 17, citing *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012) ("It is likewise not enough that the only embodiments, or all of the embodiments, contain a particular limitation.")).

In response, Zimmer points out that the '682 patent states that "'nozzle assembly 98' is 'also referred to as a duct 98 or a duct assembly 98,'" and Zimmer asserts that its proposals "merely

11

capture these equivalences and provide the plain meanings of those terms" (Dkt 72 at 19, citing Dkt 1-3, Compl. Ex. C at 7:55-56). Zimmer argues that the important aspect of its construction is that "these terms refer to structures projecting away from the helmet" (*id.*). In this regard, Zimmer emphasizes that nozzles and ducts were "expressly distinguished from discharge openings during prosecution" (*id.* at 20, citing Dkt 72-13 at 226-27, Zimmer's Ex. Q at 225-26).

The Court is not persuaded by Zimmer's argument. The disputed terms do not need construction. The meaning of the terms "nozzle," "duct" and "outlet duct" is obvious. Moreover, the Court is not convinced of the propriety of limiting multiple claimed structures to one structure—a tube—particularly where Zimmer has not identified the word "tube" in the claim language or specification. *See Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008) ("precedent instructs that different claim terms are presumed to have different meanings"). Zimmer's argument that the terms refer to structures "projecting away from the helmet," even if true, is not an argument that necessarily supports construing the terms as "tubes." Similarly, Zimmer's point that nozzles and ducts were "expressly distinguished from discharge openings during prosecution," even if true, likewise does not support necessarily construing the terms as "tubes."

3. *"[a] conduit extending downwardly from said shell so as to extend at least partially over said rear section of said head band"* (claim 1); *"a duct structure that extends over said back portion of said head band"* (claims 11 & 15)

Zimmer's proposed constructions are, respectively: "a tube projecting from the shell for directing air flow that extends at least partially over the rear section of the headband when in a neutral-spine position" and "a tube projecting from the shell for directing air flow that extends over the entire back portion of the headband when in a neutral-spine position."

Stryker argues, again, that the plain meaning of these phrases should control (Dkt 58 at 20). Stryker points out that claim 1 recites that the conduit is a structure that is part of the nozzle assembly and "receives air discharged by said fan" (*id.*, citing Dkt 1-3, Compl. Ex. C at 7:55-8:8). Stryker argues that, Zimmer's constructions, in contrast, are contrary to the plain meaning and intrinsic evidence (*id.* at 21). Stryker argues that in addition to its lack of support for limiting a duct to a tube, Zimmer also fails to identify any support for importing the limitation "when in a neutral-spine position," or for inserting the word "entire" into the phrase "extends over said back portion of said head band" (*id.* at 21). Last, Stryker opines that "because independent claim 15 recites a 'duct structure' while dependent claim 18 recites that the duct structure can include 'nozzles,' under principles of claim differentiation, 'duct structure' should be interpreted differently from 'nozzles'" (*id.*).

In support of its proposed constructions, Zimmer briefly argues that Stryker's use of the word "partially" in claim 1 suggests that in claims 11 and 15, where "partially" is noticeably absent, the duct structure must extend over the entire rear portion of the head band, not just part of it (Dkt 72 at 20).

The Court is not persuaded by Zimmer's argument for the reasons stated by Stryker. The disputed phrases do not need construction, and Zimmer's constructions improperly insert positional language not in the claims or the specification.

4.  *"below said head band," "below the/said rear section of said head band" and "below said back portion of said head band"* (claims 1, 5, 11, 15 & 16)

Zimmer's proposed construction is: "below the entire head band when in a neutral-spine position."

Stryker asserts that the three claim phrases are "clear" and "place the location of certain recited structures and/or identify where the air is discharged" (Dkt 58 at 21). Stryker argues that Zimmer's proposed construction, in contrast, rewrites three different phrases as a single phrase and "read[s] out the words 'rear section' and 'back portion'" (*id.*). Stryker argues that Zimmer's attempts to add the limitations "entire" and "when in a neutral-spine position" are equally improper (*id.* at 22).

In response, Zimmer argues that consistent with its proposed construction, an ordinarily skilled artisan would have understood that the proper plane is defined by the neutral-spine position (Dkt 72 at 19). Zimmer argues that "below" is "completely indefinite without defining a reference plane to eliminate parallax error" (*id.*). According to Zimmer, "the prosecution history makes clear, the air exit must be below the entire head band[/back portion of the head band]" (*id.* at 18).

The Court is not persuaded by Zimmer's argument. The disputed phrases do not need construction. Further, the Court is again not convinced that Zimmer's proposal to identically construe three different phrases is proper. *See Helmsderfer, supra.* Nor is the Court persuaded that Zimmer's reliance on the prosecution history provides proper support for Zimmer's proposed construction inasmuch as Stryker explained at the *Markman* hearing how the prosecution history does not show a clear and unmistakable disclaimer.

### D.  Disputed Terms of the '234 Patent

1.   *"nozzle"* (claims 1 & 8)

Zimmer's proposed construction is: "tube projecting from the helmet for directing air flow."

Stryker again argues that "nozzle" has a plain meaning that is readily understood and that the claim language and specification do not support Zimmer's attempt to limit "nozzle" to a single structure, i.e., a tube (Dkt 58 at 22).

Zimmer again argues that "[l]ike the related terms in the '682 patent, and for at least the same reasons, 'nozzle' in the '234 patent should be construed such that the structure projects from the helmet" (Dkt 72 at 22). Zimmer asserts that Stryker's "plain and ordinary" meaning of "nozzle" "does not match either the dictionary meaning or its usage in the intrinsic record" (*id.* at 23).

The Court is not persuaded by Zimmer's argument for the reasons previously stated. The word "nozzle" does not need construction. Persons of ordinary skill of this art would understand what this word means without further construction.

2. *"light emitting head"* (claims 1 & 8)

Zimmer's proposed construction is: "light outlet at the end of a fiber-optic cable."

Stryker argues that the claim language is clear and no clarification or explanation is necessary from the Court (Dkt 58 at 23). Stryker asserts that the specification supports the plain meaning inasmuch as it describes a light assembly that includes a "light source 201, disposed adjacent to a lens" and indicates that "[t]he light source is preferably one or more light-emitting diodes (LEDs)" (*id.*, citing Dkt 1-4, Compl. Ex. D at 7:3-7). The specification also describes that "[a] light housing 202 supports and surrounds the LEDs and the lens" (*id.*, citing Dkt 1-4, Compl. Ex. D at 7:10-11). According to Stryker, Zimmer's proposed construction re-writes "light emitting head" to "light outlet at the end of a fiber-optic cable," but the claim does not recite "a fiber-optic cable" and nothing in the specification indicates that "light emitting head" is limited to fiber optic lights (*id.*).

15

In support of its proposed construction, Zimmer points out that the term "light emitting head" is only used in connection with fiber optic cables in the '234 patent (Dkt 72 at 23). Moreover, Zimmer argues that the distinct use of both "light emitting head" and "light housing" suggests that the terms refer to different things (*id.* at 24). Zimmer argues that "the evidence shows that 'light emitting head' refers only to fiber-optic cables, and it certainly does not exclude them (as Stryker argues)" (*id.*).

The Court is not persuaded by Zimmer's argument. The meaning of the phrase "light emitting head" is clear in view of the intrinsic evidence, including the specifications as delineated in Stryker's argument. Persons of ordinary skill of this art would understand what this phrase means without further construction.

3. *"said light assembly being mounted to said helmet"* (claim 1)

Zimmer's proposed construction is: "some or all of the light assembly is attached to the helmet."

Stryker argues that "[a] jury can understand what it means to mount a light assembly to a helmet" (Dkt 58 at 24). Stryker further argues that the language is supported by the specification, which depicts how the light assembly is connected to the helmet (*id.*). Last, Stryker points out that Zimmer improperly inserts the limitation "some or all of" before "light assembly," a limitation not found in the claims (*id.*).

According to Zimmer, "[t]he critical issue regarding this phrase is that Stryker seeks, illogically, to exclude from the asserted claims fiber-optic lights—the *only* thing the '234 patent refers to as a 'light emitting head,' which all of the asserted claims explicitly require" (Dkt 72 at 24 [emphasis in original]). Zimmer argues that "[b]ecause the asserted claims must include a 'light

emitting head,' which explicitly refers to fiber-optic lights, the 'mounting' phrase must cover fiber-optic lights" (*id.*).

The Court is not persuaded by Zimmer's argument. The Court agrees that a jury can understand the disputed phrase and that it does not need construction. And the Court agrees that Zimmer's proposed construction again improperly relies on a preferred embodiment disclosed in the specification. *See Intervet*, 617 F.3d at 1287; *Phillips*, 415 F.3d at 1323.

## IV. CONCLUSION

As observed by the Federal Circuit, in some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and "claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. Having fully considered the parties' arguments, both oral and written, the Court determines that the terms identified by the parties in the case at bar fall within this realm. Accordingly:

**IT IS HEREBY ORDERED** that the phrases "assisting the single user is self-gowning" and "a's the user maintains sterility" in claim 125 in U.S. Patent No. 6,481,019 (the '019 Patent) are corrected to read: "assisting the single user in self-gowning" and "as the user maintains sterility."

**IT IS FURTHER ORDERED** that the remaining claim terms identified by the parties do not require construction; rather, the plain and ordinary meaning of the claim terms will control.

DATED: November 2, 2015         /s/ Janet T. Neff
                                JANET T. NEFF
                                United States District Judge